## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MICHAEL MEJIA (#K-83133), | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 08 C 4534 |
| v. | ) |
| | ) Hon. Suzanne B. Conlon |
| TERRY McCANN, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. §

1983. Plaintiff claims that Defendants, officials at the Stateville Correctional Center, violated

Plaintiff's constitutional rights by subjecting him to cruel and unusual conditions of confinement

during prior periods of confinement at Stateville. More specifically, Plaintiff alleges that: (1) he was

denied cleaning supplies, (2) he was exposed to lead-based paint, mold, and radium or radon; and

(3) the prison was vermin-infested. [All other claims have been dismissed in prior orders. *See*

Memorandum Opinion and Orders of March 3, 2009, and February 22, 2010.] This matter is before

the Court for ruling on Defendants' renewed motion for summary judgment. For the reasons stated

in this order, the motion is granted in part and denied in part.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex

Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975,

988 (7th Cir. 2006). In determining whether factual issues exist, the Court must view all the

evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000).

Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted).

## FACTS

The following facts are undisputed for purposes of this motion:

Plaintiff is a state prisoner, confined at the Stateville Correctional Center at all times relevant to this action, i.e., for intermittent periods between November 2005 and October 2008, while on court writs. (Amended Complaint, document no. 11, p. 2; Defendants' Exhibit A, Deposition of Michael Mejia, p. 11.) Defendant Terry McCann and Dee Battaglia were, at different times, Stateville wardens during the time period at issue. (*Id.*, pp. 2-3.) Defendants Marvin Reed, Mark Hosey, Alex Jones, and Jimmy Dominguez[1] were all assistant wardens at Stateville at the time of the events giving rise to this action. (*Id.*, pp. 2-3; Plaintiff's Dep., pp. 37, 39-40.)

Birds flew "almost everywhere you go" in all the cellhouses. (Plaintiff's Dep., p. 22.) The birds left droppings. (*Ibid.*)

---

[1]Jimmy Dominguez is linked electronically to Defendants' motion for summary judgment but is not listed as a movant on the summary judgment materials themselves.

2

Some time between September and December 2005, Plaintiff contracted blastomycosis, a respiratory infection. (*Id.*, pp. 23-24.) When Plaintiff told his treating physician about the birds in the cellhouses, the doctor informed him that birds in the Midwest were currently carrying that disease. (*Id.*, p. 23.)

Plaintiff was usually provided two bars of soap a week at Stateville. (Plaintiff's Dep., pp. 14-15; Plaintiff's Exhibit O, Affidavit of Michael Mejia, ¶ 3.)[2] It is Plaintiff's understanding that inmates housed at other facilities were supplied with brooms, sponges, scouring pads, disinfectant, and garbage bags. (Plaintiff's Exhibit M, Affidavit of Michael Mejia, ¶ 3.)

At some point in time, Stateville stopped using deep well water and changed to city water in response to a previous lawsuit concerning excessive levels of radium in the well water. (Amended Complaint, ¶ G.) Plaintiff believes that only the large intake and supply pipes were changed, however, leaving layers of built-up radium in the smaller pipes that supply water to the prison's sinks and showers. (*Ibid.*)

Plaintiff has read in newspapers that EPA tests show that there is radium in Stateville's drinking water supply. (Plaintiff's Dep., p. 21.) Plaintiff is also aware of prior lawsuits regarding Stateville's water supply. (*Ibid.*) Plaintiff believes that Stateville has been fined for radium in the water. (*Ibid.*) Plaintiff has experienced hair loss since his incarceration, and attributes that hair loss to radium or radon in the water. (*Ibid.*) Plaintiff has never seen a doctor for hair loss, nor confirmed from a professional that the hair loss was caused by the water. (*Id.*, p. 22.)

---

[2]Defendants point out that all of Plaintiff's "affidavits" are non-notarized. For purposes of this motion, the Court will accept as true any statement made by Plaintiff concerning which he could testify in court. *See* Fed. R. Evid. 602.

An infestation of cockroaches and other small insects inhibited Plaintiff's sleep. (Plaintiff's Dep., pp. 23, 24.) Mice sometimes ate Plaintiff's food items and defecated on his belongings, resulting in his having to throw away the property. (Plaintiff's Exhibit C-1, Affidavit of Michael Mejia, ¶ 6.)

Stateville had an extermination contract with Critter Ridder, Inc., during the time period in question. (Defendants' Exhibit E-1, Agency/Buyer and Vendor Contact Page and Contract.) The contract required exterminators to visit the facility at least twice a month. (*Id.*, p. 23, Site Visit Schedule.) Critter Ridder actually visited Stateville at least eight times a month during the relevant time period. (Defendants' Group Exhibits E-2 - E-9, Contractual Service Employee Sign-In Sheets.)

Plaintiff never saw anyone check prisoners' cells for needed maintenance or repairs. (Plaintiff's Exhibit H, Affidavit of Michael Mejia, ¶ 1.) Nevertheless, the prison staff regularly checked the cells to make sure that they were clean and in good repair. (Defendants' Group Exhibit F, Safety and Sanitation Reports.)

Mold grew in areas where paint was peeling. (Amended Complaint, ¶ F.) Plaintiff believes that the exposure to mold made him sneeze. (Plaintiff's Dep., p. 21.) No doctor has ever verified that the mold is the cause of Plaintiff's sneezing. (*Ibid.*) Plaintiff knows that the substance he saw in his cell was "black mold" because he has seen it plenty of times in his life and has read about it in books. (*Id.*, pp. 38-39.) However, Plaintiff has no reports from an expert verifying that the substance was, in fact, black mold. (*Id.*, pp. 38, 39.)

On August 11, 2008, Plaintiff initiated this lawsuit. (*See* docket.) The 85-page complaint included a number of grievance forms as exhibits. (Complaint, document no. 1.) Although some of those grievances included responses from prison officials, none of the grievances relating to

4

purportedly inhumane conditions of confinement bore any kind of "received" stamp or response from correctional officials. (*Id.*)

On September 8, 2008, Plaintiff submitted an amended complaint limited to his conditions claim, in compliance with the Court's Minute Order of August 20, 2008. (Amended Complaint, document no. 11.) The amended complaint was likewise accompanied by copies of multiple grievances, but none of them bears a file-stamp or response. (*See* unmarked exhibits to Amended Complaint.)

Edmund Butkiewicz was Plaintiff's counselor at Stateville from November 20, 2007, to December 31, 2007. (Defendants' Exhibit D-3, Affidavit of Edmund Butkiewicz, ¶ 2.) Butkiewicz has reviewed his records and attests that Plaintiff never submitted to him the grievance dated December 9, 2007, that is attached to the amended complaint. (*Id.*, ¶ 3.) In fact, Butkiewicz has no record of ever receiving any grievances from Plaintiff concerning a lack of cleaning supplies. (*Ibid.*) Had he received any such grievance, he would have responded in the section of the grievance form eliciting the counselor's response. (*Id.*, ¶ 4.)

Sherwin Miles was Plaintiff's counselor at Stateville from January 2008 to July 2008. (Defendants' Exhibit D-4, Affidavit of Sherwin Miles, ¶ 2.) Miles has reviewed his records and testifies that he has no record of any of the grievances attached to the amended complaint dated December 9, 2007. (*Id.*, ¶ 3.) In fact, Miles has no record of ever receiving any grievances from Plaintiff concerning the matters discussed in those grievances. (*Ibid.*) Had he received any such grievance, he would have responded in the section of the grievance form eliciting the counselor's response. (*Id.*, ¶ 4.)

5

Tammy Garcia is a correctional counselor and grievance officer at Stateville. (Defendants' Exhibit D-2, Affidavit of Tammy Garcia, ¶¶ 1, 2.) In that capacity, Garcia maintains records of all inmate grievances. (*Id.*, ¶ 2.) Every inmate grievance filed in the Grievance Office is logged into the database the day it is received. (*Ibid.*) The grievance is then either routed to the appropriate department for a response or returned to the inmate if improperly filed (such as when an inmate files an emergency grievance that is deemed a non-emergency). (*Ibid.*)

Garcia has reviewed both the prison's database and Plaintiff's master file and has found no record that Plaintiff filed any of the grievances attached to his complaint. (*Id.*, ¶ 3.) Plaintiff's Cumulative Counseling Summary reflects approximately 103 issues Plaintiff brought to counselors' attention between and November 18, 2005, and March 26, 2009. (Defendants' Exhibit F to previous Motion for Summary Judgment). None of the entries in the Cumulative Counseling Summary relate to the issues underlying this lawsuit.

While housed at the Menard Correctional Center, Plaintiff filed two grievances directly with the Administrative Review Board regarding living conditions at Stateville when Plaintiff was housed there on court writs. (Defendants' Group Exhibit C, Offender Grievances.) [As will be discussed in greater detail *infra*, an inmate may bypass institutional steps and file a grievance directly with the ARB if he is suing over a matter pertaining to a facility other than that in which the inmate is currently housed. (*See* Defendants' Group Exhibit B, Affidavit of ARB Chairperson Jackie Benton, ¶ 4(d); 520 Ill. Admin. Code § 504.870(a)(4).)]

The first grievance, dated November 5, 2006, touched upon Stateville's showers, cold food, a denial of meals that comported with Plaintiff's religious beliefs, having to sleep on an old mattress that reeked of urine, a leaking ceiling, moldy walls, and having to "fight" with the cockroaches that

6

crawled over him every night. (Defendants' Group Exhibit C-1, Offender Grievance.) The Administrative Review Board denied the grievance without a hearing. (*Id.*)

In a second grievance dated June 11, 2007, Plaintiff complained that he had been subjected to cruel and unusual conditions of confinement because his bedding was dirty and shabby, he had to make do without toiletries, his cell was dirty, the mattress was filthy and uncomfortable, he was denied cleaning supplies, the toilet would flush no more often than once every twelve hours, he received only one shower a week, he was not provided with a diet that comported with religious beliefs, the food made him ill, cockroaches affected his sleep, the prison failed to provide meaningful access to the courts, and the opportunities for exercise were inadequate, among other claims. (*See* Defendants' Group Exhibit C-2, Offender Grievance.)

The Administrative Review Board received neither any other grievances directly filed with that office, nor any appeals with regard to alleged grievances filed at the institutional level concerning the conditions of Plaintiff's confinement at Stateville. (Miller Affidavit, ¶ 7.) Likewise, the Menard Correctional Center has no record that Plaintiff filed any other grievances at Menard relating to his treatment at Stateville. (Defendants' Exhibit D-1, Affidavit of Jeanette Cowan, ¶ 3.)

## DISCUSSION

Summary judgment is granted in favor of the Defendants on all claims except Plaintiff's claim that he was denied cleaning supplies. Whether or not Plaintiff pursued grievance procedures before filing suit, Defendants have established that they are entitled to judgment as a matter of law on all other claims. The Court will address each basic contention in turn.

7

## I. Cleaning Supplies

Defendants' motion for summary judgment is denied with respect to Plaintiff's claim that he was denied cleaning supplies. Plaintiff has shown proof of exhaustion on that issue, and Defendants have failed to establish that no constitutional violation occurred.

### A. Exhaustion

Plaintiff satisfied administrative exhaustion requirements with respect to his claim that he was denied cleaning supplies at Stateville. The Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a); *see also Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000); *Booth v. Churner*, 531 U.S. 956 (2001). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under Section 1983." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999); *Smith v. Zachary*, 255 F.3d 446, 450 (7th Cir. 2001).

In order to exhaust, a prisoner "must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2001). An inmate must comply with the rules established by the State with respect to the form and timeliness of grievances. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002) (where prisoner failed to avail himself of the administrative grievance process in a timely manner, he was barred from pursuing relief in federal court). The State has the burden of establishing non-exhaustion. *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (per curiam).

8

While housed at the Menard Correctional Center, Plaintiff filed a grievance directly with the Administrative Review Board concerning living conditions at Stateville. Among myriad other complaints, Plaintiff charged: "Grievant was not provided with any brillo pad, disinfect[ant], or any supplies period to clean the cell with." (Plaintiff's Exhibit C-2, Committed Person's Grievance, at p.2; Defendants' Group Exhibit G, Offender Grievance). The grievance is dated June 11, 2007, and bears a "received" stamp from the Office of Inmate Issues. (*Ibid.*)

Plaintiff's filing of a grievance with the ARB satisfied the exhaustion process. An inmate may bypass institutional steps and file a grievance directly with the ARB if he is suing over a matter pertaining to a facility other than that in which the inmate is currently housed. (*See* Defendants' Exhibit B, Affidavit of Jackie Miller, ¶ 4(d).);³ 520 Ill. Admin. Code § 504.870(a)(4).)] Because Plaintiff was housed at Stateville only periodically when he was transferred there on court writs, his ability to file grievances at the institutional level was hampered. The grievance to the ARB comported with the State's procedural and timeliness requirements. Defendants have failed to meet their burden of establishing non-exhaustion.

## B. Substantive Merit

Defendants have likewise failed to demonstrate that they are entitled to judgment as a matter of law on Plaintiff's claim that he was denied cleaning supplies.

---

³In her affidavit, Miller swore that Plaintiff never filed a grievance regarding the denial of cleaning products at Stateville. Miller Affidavit, ¶ 7. It is perhaps understandable that Miller overlooked that claim since Plaintiff's multi-page grievances contained a laundry list of complaints. However, the Court expects greater care from the Attorney General. Counsel is cautioned to ensure that all representations in court filings are factually correct. *See* Fed. R. 11(b).

9

The Eighth Amendment requires that inmates be furnished with basic human needs. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993); *Christopher v. Buss*, 384 F.3d 879, 881-82 (7th Cir. 2004). To prevail on an Eighth Amendment claim, a plaintiff must show that prison officials deliberately ignored conditions of confinement that failed to meet contemporary requirements of minimal decency. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008); *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001). Minimal decency requires the prison to provide reasonably adequate sanitation. *See Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006); *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997).

Substandard living conditions do not necessarily equal unconstitutional conditions. *Compare Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) ("inmates cannot expect the amenities, conveniences and services of a good hotel"), with *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (objective component met where prison conditions were "strikingly reminiscent of the Black Hole of Calcutta"). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment." *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997), *citing Farmer, supra*, 511 U.S. at 833-34. "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Prison officials violate an inmate's constitutional rights in conditions of confinement cases where the alleged deprivation is "sufficiently serious" (the objective standard) and (2) the officials act with deliberate indifference (the subjective standard). *Farmer v. Brennan*, 511 U.S. 825 (1994); *Lehn v. Holmes*, 364 F.3d 862, 872 (7th Cir. 2004).

Here, the alleged long-term denial of cleaning supplies, even after Plaintiff complained about filthy and inhumane living conditions, states an actionable claim. Defendants' argument that two

10

bars of soap a week somehow satisfied the need for cleaning supplies is risible. Defendants rely on a 1994 case involving a denial of cleaning supplies for twenty-four hours. *See Lunsford v. Bennett*, 17 F.3d 1574 (7th Cir. 1994). Even if security concerns militated against allowing Plaintiff to keep brooms and disinfectant in his cell, there were surely other means available to assure that Plaintiff lived in a reasonably sanitary environment. Plaintiff also asserts injury: he claimed in a grievance that he "always breaks out with red bumps all over his body in F-House because F-House is not properly sanitized." (Defendants' Exhibit C-2.) Assuming Plaintiff lived in the long-term squalor described in his complaint and deposition, he may be entitled to relief under 42 U.S.C. § 1983. Summary judgment is denied as to Plaintiff's claim that he was denied needed cleaning supplies.

## II. Exposure to Black Mold

Plaintiff maintains that his ceiling leaked and that the paint on his walls was peeling, exposing him to underlying layers of lead-based paint and "black mold."

### A. Exhaustion

For the reasons discussed *supra*, the Court rejects Defendants' argument that Plaintiff failed to exhaust administrative remedies on this issue. In a second grievance filed directly with the Administrative Review Board following a transfer to the Menard Correctional Center, Plaintiff complained, among other matters, about "black mold" in the showers at Stateville. *See* Defendants' Exhibit C-1, p. 3. In that grievance, Plaintiff stated that he was housed at Stateville from August 3, 2006 until October 4, 2006; his grievance was received by the Office of Inmate Issues on November 16, 2006, within the sixty-day time frame required by the Illinois Administrative Code. The Court is satisfied that Plaintiff followed the administrative grievance procedures prescribed by IDOC rules. *See Ford*, 362 F.3d at 397.

11

## B. Substantive Merit

Nevertheless, Defendants' motion for summary judgment is granted on substantive grounds because Plaintiff cannot prove that the mold caused him any harm.

Plaintiff's subjective belief that the mold made him sneeze is not enough to proceed to trial. "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), *quoting Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008). In his grievance, Plaintiff reported that someone told him that he should not wipe away the mold that grew on the walls because the mold could turn into something "toxic" if it were "irritated." However, opinions or inferences based on medical, scientific, technical, or other specialized knowledge within the scope of Fed. R. Evid. 702 are not admissible as lay testimony. *See United States v. York*, 572 F.3d 415, 420 (7th Cir. 2009).

The hearsay statement about toxicity by a fellow inmate is insufficient to create a triable issue of fact. "[C]onclusory allegations, without backing from medical or scientific sources, that [the plaintiff was exposed] to diseases and . . . problems which he would not otherwise have suffered" are insufficient to survive summary judgment. *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997); *see also Vasquez v. Frank*, 290 Fed. Appx. 927, 929 (7th Cir. 2008). A motion for summary judgment "requires the responding party to come forward with the evidence that it has – it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad* 569 F.3d 757, 767 (7th Cir. 2009) (citations omitted).

Plaintiff declares that he "sneeze[s] all the time" on account of the mold. *See* Plaintiff's Dep. at p. 21. Nevertheless, there is no evidence that he ever sought treatment for the sneezing, and he

12

concedes that no doctor has ever told him that the mold is the cause for his sneezing. *Ibid.* Without any medical records establishing a link between Plaintiff's sneezing and the mold, nor any maintenance or environmental records suggesting that the mold was a health or safety issue, Plaintiff's "black mold" claim cannot survive summary judgment.

## III. Exposure to Lead Paint

### A. Exhaustion

It seems highly unlikely that Plaintiff exhausted administrative remedies with regard to his claim about lead paint at Stateville. Aside from Plaintiff's unstamped, non-processed grievances, there is no evidence in the record that Plaintiff availed himself of administrative grievance procedures. As noted in the fact section, prison counselors, grievance investigators, and the Administrative Review Board maintain records of grievances and inmate complaints at every level of review. Although there is ample record of Plaintiff's numerous contacts with his counselors, including over a hundred grievances and appeals, there is only Plaintiff's say-so that he pursued administrative remedies regarding the presence of lead paint. *See* Plaintiff's Exhibit A, Affidavit of Michael Mejia, ¶ 1. All other evidence entirely refutes Plaintiff's contention that he exhausted administrative remedies in connection with exposure to lead paint. It strains reason to credit that "Plaintiff filed his grievances to the Counselors, Grievance Officer, Wardens, and the ARB" (see Plaintiff's Local Rule 56.1 Filing, ¶ 12), all without any record of his grievances being received at any stage of the administrative process.

If, as appears to be the case, Plaintiff failed to exhaust administrative remedies, the Court cannot consider that claim. *Perez v. Wis. Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed;

13

the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intraprison remedies before judgment." *Ibid.* Dismissal of Plaintiff's lead paint claim is warranted for failure to exhaust administrative remedies before filing suit.

However, the Court declines to hold an exhaustion hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). The Court will, instead, accept as true that Plaintiff attempted to exhaust administrative remedies without success.

## B. Substantive Merit

Even ignoring exhaustion concerns, Plaintiff has no tenable claim relating to exposure to lead paint. Plaintiff claims that he knows Stateville uses lead paint because he has read ingredients on paint cans. (Plaintiff's Exhibit G, Affidavit of Michael Mejia, ¶¶ 1 and 2.)[4] But the existence of lead paint on walls does not state a viable constitutional claim.

The judges of this court have repeatedly held that claims of lead paint undercoats on prison walls are not the kind of deprivation of basic human needs redressable under the Eighth Amendment. *See, e.g., Sanchez v. McCann*, 09 C 2289, 2010 WL 1408917, *3 (N.D. Ill. Apr. 2, 2010) (Conlon, J.); *Walker v. Dart*, No. 09 C 1752, 2010 WL 669448, *3 (N.D. Ill. Feb.19, 2010) (Andersen, J.); *Jones v. Mitchell*, No. 93 C 405, 1994 WL 517202, *3-4 (N.D. Ill. Sep. 20, 1994) (Moran, J.); *Foster v. Cooper*, No. 92 C 6159, 1994 WL 110180, *9 (N.D. Ill. Mar. 28, 1994) (Marovich, J.). "[F]ailing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not [a constitutional violation]." *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001).

---

[4]The Court wonders where Plaintiff found those paint cans--according to the Environmental Protection Agency, lead-based paint has been banned in the United States since 1978, more than thirty years. *See* http://www.epa.gov/lead/pubs/leadinfo.htm.

14

Furthermore, "[t]o recover damages under § 1983, a plaintiff must show both injury and 'a causal connection between that injury and the deprivation of a constitutionally protected right.' " *Maus v. Murphy*, 29 Fed. Appx. 365, 369 (7th Cir. 2002), *quoting Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999). In the case at bar, Plaintiff has shown neither injury nor causation. Plaintiff has not submitted any competent evidence that lead paint in his cellhouse has caused him injury. Consequently, summary judgment is granted in favor of the Defendants on Plaintiff's lead paint claim.

## IV. Radium in the Water

Plaintiff contends that due to a previous lawsuit citing the excessive and harmful levels of radium in ground water, Stateville changed from deep wells to city water. He maintains, however, that only large intake and supply pipes were changed, leaving layers of built-up radium in the smaller pipes that supply water to the facility's sinks and showers. (Amended Complaint, ¶ 3G.)

Again, there is no convincing evidence of exhaustion, no grievance bearing the stamp of any correctional office or official. In any event, Plaintiff has failed to produce any proof substantiating his claim that levels of radium in Stateville's water are unacceptably high.

The U.S. Court of Appeals for the Seventh Circuit has considered and rejected prisoner constitutional claims that the Joliet area's water contains dangerously high levels of radium and radon:

> Poisoning the prison water supply or deliberately inducing cancer in a prisoner would be forms of cruel and unusual punishment, and might be even if the harm was probabilistic or future rather than certain and immediate, *Helling v. McKinney*, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). But failing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not. *McNeil v. Lane*, 16 F.3d 123, 125 (7th Cir. 1993); *Steading v. Thompson*, 941 F.2d 498 (7th Cir. 1991); *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988);

15

> *Clemmons v. Bohannon*, 956 F.2d 1523, 1527 (10th Cir. 1992) (en banc). Many
> Americans live under conditions of exposure to various contaminants. The Eighth
> Amendment does not require prisons to provide prisoners with more salubrious air,
> healthier food, or cleaner water than are enjoyed by substantial numbers of free
> Americans. *McNeil v. Lane, supra,* 16 F.3d at 125; *Givens v. Jones,* 900 F.2d 1229,
> 1234 (8th Cir. 1990).

*Carroll,* 255 F.3d at 472. Unfortunately, it is a fact of life that the water in this region has high

levels of radium and radon. Plaintiff has not, and surely cannot, suggest that prison officials have

actually poisoned the water.

The record does not support a finding that correctional officials have refused to replace

radium-tainted pipes. Again, at this stage of the proceedings, Plaintiff had to come forward with

evidence to show that there is a triable issue for the jury to decide. *See* Fed. R. Civ. P. 56(c);

*Jackson v. Kotter,* 541 F.3d 688, 697 (7th Cir. 2008); *Keri v. Bd. of Trustees of Purdue Univ.,* 458

F.3d 620, 627-28 (7th Cir. 2006). As the non-moving party, Plaintiff can no longer rest on the

allegations contained in his pleadings but was required to come forward with specific evidence to

establish a genuine issue for trial. *See Keri,* 458 F.3d at 628. Certainly, defense counsel might have

made some minimal effort to demonstrate that Stateville's pipes were replaced and/or that there are

not unsafe levels of radium in the water. However, Plaintiff has not met his burden of production.

Plaintiff has also failed to adduce sufficient evidence of injury from the water for the matter

to go to a jury. In response to Defendants' motion for summary judgment, Plaintiff contends that he

developed extremely dry skin and dandruff, as well as lost hair from his head and body on account

of radium in the water. (Plaintiff's Exhibit I, Affidavit of Michael Mejia, ¶ 7.) But the mere fact that

Plaintiff did not suffer from dry scalp and hair loss prior to his incarceration at Stateville is not, alone,

enough for the matter to go to a jury. Without any authority to back up Plaintiff's claims either that

16

(a) radium levels in Stateville's water are unacceptably high or (b) that radium has caused him harm, summary judgment must be granted in favor of the Defendants on this issue.

## V. Pest Infestation

Plaintiff satisfied the administrative exhaustion process concerning the presence of cockroaches. Both of Plaintiff's grievances filed with the ARB include allegations of having to "fight" with the cockroaches that crawled over him every night. (Defendants' Exhibit C-1, Offender Grievance, p. 4.) Nevertheless, Defendants' good faith efforts to eradicate pests absolves them from liability for the alleged pest infestation. The presence of vermin in Plaintiff's housing unit is entirely unacceptable; however, Plaintiff cannot recover damages because Defendants have attempted to alleviate the problem and because Plaintiff has not shown any real injury.

### A. Cockroaches

A prolonged pest infestation, specifically a significant infestation of cockroaches and mice, may be considered a deprivation sufficient to constitute a due process violation. *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir.1996). In *Antonelli*, however, the Court of Appeals emphasized that "the allegation of sixteen months of infestation **and significant physical harm**" distinguished that case from the typical pest-infestation complaint." *Id.* (emphasis added). In this case, Plaintiff complains only of lost sleep.

The Court of Appeals has upheld summary judgment in cases more severe than that presented here. In *Sain v. Wood*, 512 F.3d 886 (7th Cir. 2008), the plaintiff, a civil detainee, alleged that he was plagued by cockroaches and even repeatedly bitten during his time in disciplinary segregation; in addition, he alleged that peeling paint, foul odors, lack of air-conditioning in his cell, and his inability to open his window without letting in bugs amounted to inhumane treatment . In affirming summary judgment in favor of the defendants, the Court of Appeals declared,

17

The conditions of Mr. Sain's detention were certainly unpleasant. The state deserves no praise for permitting them to persist. However, we cannot say that, whether considered individually or collectively, they constitute a constitutional violation. To be considered a constitutional violation, Mr. Sain's deprivations must be "objectively serious." We conclude that a reasonable jury could not conclude that Mr. Sain's conditions of confinement were objectively serious enough to establish a constitutional violation.

*Sain*, 512 F.3d at 894. While intentional sleep deprivation or other forms of torture would certainly offend the Constitution, *see, e.g., Vance v. Rumsfeld*, 694 F. Supp. 2d 957, 966-67 (N.D. Ill. 2010) (Andersen, J.), sleep lost as a collateral consequence of a losing battle to control pests does not.

Plaintiff cannot claim new and greater injuries in response to Defendants' motion for summary judgment. At his deposition, Plaintiff was asked, "[Is (sic) there any other injuries that you suffered as a result of the pest infestation at Stateville?" (Plaintiff's Dep., p. 25.) He replied, "No." (*Ibid.*) However, in an affidavit opposing summary judgment, Plaintiff contends that he hallucinates, has gastro-intestinal issues, and suffers from stress and depression.

Plaintiff may not defeat summary judgment by raising new claims inconsistent with his prior sworn testimony. "[L]itigants cannot create sham issues of fact with affidavits that contradict their prior depositions." *Janky v. Lake County Convention and Visitors Bureau*, 576 F.3d 356, 362 (7th Cir. 2009), *quoting Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 592 (7th Cir. 2007). "If such contradictions were permitted . . . 'the very purpose of the summary judgment motion – to weed out unfounded claims, specious denials, and sham defenses – would be severely undercut.' " *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005), *quoting Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996). Plaintiff cannot now claim the dire consequences of lost sleep when he failed to do so at his deposition.

It is undisputed that Stateville had a contract with an exterminator, even though Plaintiff never actually witnessed an exterminator doing any spraying or exterminating. It is also uncontested that

18

the exterminator visited the prison at least eight times a month during the relevant time period to combat vermin and insects. (*See* Defendants' Group Exhibit F.) In an unpublished decision, the U.S. Court of Appeals for the Seventh Circuit commented, "Courts have routinely recognized that "[k]eeping vermin under control in jails, prisons and other large institutions is a monumental task, and that failure to do so, without any suggestion that it reflects deliberate and reckless conduct in the criminal law sense, is not a constitutional violation." *Chavis v. Fairman*, 1995 WL 156599, *4 (7th Cir. Apr. 6, 1995) (internal punctuation and string citations omitted). Although an only-occasional extermination does not, by itself, necessarily negate a showing of deliberate indifference, *Antonelli*, 81 F.3d at 1431, the policy of "frequent" exterminations "certainly cannot support a claim of deliberate indifference." *Sain*, 512 F.3d at 895. Even if the pest problem is as bad as Plaintiff describes, he cannot demonstrate deliberate indifference on the part of the Defendants. Unfortunately, unless inmates and staff are respectful of their surroundings and careful about food storage, no amount of pest control will be able to combat the presence of parasites who feed on detritus.

**B. Mice**

There is a second obstacle that precludes recovery with regard to Plaintiff's claim concerning mice in his housing unit: the mice admittedly caused only property damage.

Federal law provides that "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see also Zehner v. Trigg*, 133 F.3d 459, 462-63 (7th Cir. 1997) (upholding the PLRA's limitation on damages in the absence of a showing of physical injury); *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003) ("We believe that . . . § 1997e(e) forecloses an action for nominal or punitive damages for an Eighth Amendment violation involving no physical injury"). If Plaintiff wishes to sue correctional officials for lost property, he must do so in state court.

19

## C. Birds

Irrespective of exhaustion concerns, Plaintiff's claim that he contracted blastomycosis from bird droppings is time-barred. In Illinois, the statute of limitations for Section 1983 actions is two years. *See, e.g., Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008); 735 ILCS § 5/13-202. Illinois law does not toll the statute of limitations for prisoners. *Schweihs Burdick*, 96 F.3d 917, 919 (7th Cir. 1996); *Turner-El v. Davis*, No. 10 C 5188, 2010 WL 3526379, *1, n.1 (N.D. Ill. Aug. 30, 2010) (Norgle, J.). Even if Plaintiff were able to establish that he contracted blastomycosis from bird droppings, the statute of limitations has extinguished any cause of action. Plaintiff contracted the infection "at the end of 2005," but he waited until August 11, 2008, more than two years later, to commence this lawsuit. Because Plaintiff's claim is untimely, summary judgment is granted in favor of the Defendants on this issue. In fact, any conditions claims pre-dating August 11, 2006, are time-barred.

## WARNING TO PLAINTIFF

As a final concern, Plaintiff is cautioned to be scrupulously honest in all court filings. In ruling on a motion for summary judgment, the Court cannot weigh the affidavits or the credibility of the parties. *See, e.g., Paz v. Wauconda Healthcare and Rehabilitation Centre, LLC*, 464 F.3d 659, 664 (7th Cir. 2006); *McCarthy v. Zaruba*, No. 05 C 4321, 2007 WL 1455840, at *5 (N.D. Ill. May 14, 2007) (Hibbler, J.). Nevertheless, many of Plaintiff's allegations strike the Court as wildly exaggerated at best and outright falsehoods at worst. The Court notes that Plaintiff has commenced several recent lawsuits. Plaintiff is advised that Rule 11 of the Federal Rules of Civil Procedure provides for the imposition of sanctions, including monetary fines and dismissal, for misrepresentations to the Court. *See also Sloan v. Lesza*, 181 F.3d 857, 859 (7th Cir. 1999).

20

## CONCLUSION

In sum, Defendants' motion for summary judgment is granted in part and denied in part. Summary judgment is granted in favor of the Defendants on Plaintiff's claims of exposure to radium in the water, lead-based paint, and black mold; summary judgment is also granted in favor of Defendants on Plaintiff's claim of pest infestation. Plaintiff may proceed only on his claim that he was denied essential cleaning supplies.

IT IS THEREFORE ORDERED that Defendants' renewed motion for summary judgment [#146] is granted in part and denied in part. Summary judgment is granted in favor of Defendants on Plaintiff's claims of radium, lead paint, mold, and pest infestation. At the close of the case, the Clerk of Court is directed to enter judgment in favor of the Defendants on those claims pursuant to Fed. R. Civ. P. 56. The motion is denied with respect to Plaintiff's claim that he lived in squalor because he was denied cleaning supplies.

IT IS FURTHER ORDERED that this matter is referred to the Executive Committee for assignment of a magistrate judge to explore the possibility of settlement of Plaintiff's sole remaining claim.

Enter: _Suzanne B. Conlon_

SUZANNE B. CONLON
United States District Judge

Date: _December 10, 2010_

21